No. 64 Norma Ezell et al. v. Lexington Insurance Company et al. Let's let your opponents get settled and then you may start. Yes, Your Honor. Now. Good morning. May I reserve three minutes, please, Judge Lynch? Yes, certainly. Three minutes. Thank you. Plaintiffs in this action secretly for fraud committed with respect to structured settlements. Plaintiffs contend that the defendants agreed to make monthly payments based on a specified amount in the settlement agreements they entered into in the underlying litigation. With respect to Mr. Ezell and Ms. Whitley, the settlement memorandum said that $200,000 would be quote, annuitized, close quote. Monthly payments were then made pursuant to a settlement agreement that was entered into later. The agreement spoke precisely about what the monthly payments should be. Is that correct? That is correct. Yes. which said that it set forth all the essential terms, one of which, in our opinion, is that $200,000 would be annuitized. Defendants, unless I miss it, never address what that means to say that $200,000 will be annuitized. Instead, as I understand it, defendants say, we promised to make certain monthly payments, we made them, case closed. But, as we allege, only 96% of the $200,000 was used to make those monthly payments. With respect to Ms. Biddings, there was only one agreement, and that agreement said that, and I hope I get this number right, $1.642 million was the present value of the monthly payments that were listed in that settlement agreement. Both sides, so you have a mediation, and then both sides, both represented by counsel, come to an agreement that $1.6-whatever-million is the present value of the following stream of payments. Correct. Why aren't both sides bound by that? And, by the way, it could well be the present value, depending on what discount rate you're using. What we're saying is it's not the present value. Well, how do you know unless you know the discount rate? Well, that's the point here, but the defendants have never said to us, well, no, we did fund it fully with $1.642 million. The fact that you didn't negotiate and agree on and stipulate in the agreement to the discount rate tells me pretty clearly that this wasn't an agreement that X thousand dollars would be invested. It was an agreement that I'll get the following stream of payments, which are specified in the agreement, because if you were really entering an agreement, as you say, which is $200,000 would be spent or would be invested to generate a fund of money, you'd have to specify the discount rate, or else you wouldn't know what you were agreeing to. Well, the discount rate could have been specified, but it wasn't. Which tells me that what you were really agreeing to is a stream of payments that are, in fact, specified to the penny in the agreement. What the payments were upon was the present value, and it wasn't the present value. That's a very specific term. If the agreement had simply said, here are monthly payments that we are going to make, we wouldn't be here. But they were told it was the present value. But it wasn't. As I understand it, when you say the present value, you're actually talking about an agreement signed by both sides. Correct. So the defendant could come before us and say, the plaintiffs told us that that was the present value. See right here, they agreed to it. With respect, if I may back up for a minute, with respect to Ezell and Whitley, Mr. Senderhoff gave them monthly amounts. They're the experts on structured settlements. They're the experts on annuities. Saying, these are the monthly amounts that will give you a present value of $200,000. Well, is that the way it should be read, or should it be read as saying, for the investment of a present value of an investment of $200,000, we will pay you or arrange to have you paid the following monthly installments for the following period of time. If you look at the agreement in the latter way, that of course leaves room as a commercial matter for the company that's ultimately on the hook for the money to pay its overhead expenses, including things like the commission involved here. But given $200,000, given the cost of toing business, we will pay you X dollars a month. And it seems to me that what we're dealing with here is the latter kind of a contract. I think the way you phrased it, your honor, would have been a different contract. This has to be put in the context, I believe, that this is not a case of a plaintiff going to an annuity company. Just a person going to an annuity company to buy an annuity and saying, I have $200,000. What will you pay me monthly for that? A person in that position would, or a reasonable person, would know that the company is going to make a profit somehow. And wouldn't expect that all $200,000 would be given to their benefit, that the defendant annuity company is a charitable organization that is not going to take any profit. But this is a settlement based on a structured settlement of an underlying claim. And when the company that is the expert, the AIG companies, says, we are going to annuitize $200,000, we don't think that can be read as a matter of law to say, well, really what we're doing. Really what we're doing is we're saying, here's $200,000. We're going to give it to an annuity company. And then they're going to do what they would do in a normal situation if you just went out and bought an annuity. Your argument makes perfect sense if we ignore the fact that the monthly payments were specified in specific dollar amounts. In other words, you're telling us how it might well be fair to read a contract which lacks a term that this contract includes. And so I just don't, I don't, I guess the point that I cannot see is how someone would say, this monthly amount must be calculated on the basis that there will be no cost of doing business on the part of those parties who are ultimately going to provide the monthly amount. No, we would not say that we would think that the annuity companies wouldn't want to make some kind of money for it. But the liability insurer, Lexington in both of these cases, is the one that's providing funds. It could pay the commission. It could pay the costs. It could go to the annuity company and say, we promised to annuitize $200,000. We promised the present value of $1.642 million. So do that, and we'll cover the commission and the costs. Nothing says that... In which case they would require more than $200,000. Lexington would pay more than $200,000. Yeah. But the contract doesn't say Lexington will pay only $200,000 to the annuity company. Do you think the contract can fairly be read to say, gee, Lexington may very well pay more than $200,000? Not to the plaintiffs, but that because they're a liability insurer and they cover costs, they have made a settlement agreement, made promises to the plaintiffs. That doesn't mean that they couldn't also be paying money to the annuity company to obtain what they promised to the plaintiffs. The settlement agreement doesn't say, we will spend $200,000 and $200,000 only with respect to an annuity for you. It's a very different contract. It says, we will annuitize $200,000 for you. And annuitize means to take a lump sum and turn it into monthly payments. With or without a commission. If the commission is an ordinary cost of turning a lump sum into a stream of payments, then isn't it included within the definition of annuity? I don't know. It sounds ambiguous. And maybe if they didn't specify what the payments were actually going to be, then you could have a breach of contract action saying this is an ambiguous clause, you should construe it against the drafter and they drafted this and they're the experts. But to say that it's so clear that annuitize excludes the commission, even when we're specifying the amounts, that's where I'm having a little difficulty seeing how you get to fraud on that. And I understand that we're not asking this court certainly to say, plaintiffs, you win. Right. You want to get to some discovery. And to say that they intended to let plaintiffs in these structured settlements think that they would not be paying a commission. One of your allegations is that during the negotiations, the defendants or some representative actually showed you an illustration. Yes. The illustration isn't attached to the complaint. Was it put into the record under our case law that allows a reference to a written document be? I don't believe so, Your Honor. I'm quite sure it wasn't. I'm not 100% sure, but I'm 99% sure it's not in the record. If that illustration showed you the stream of money that they actually paid, I think you'd have real difficulty. And so then we get back to a 9B question. Does the failure to put in the illustration when the contract is in and the contract has the amounts, does that mean you've stated enough under 9B? I don't know. But I do want to come back. I do want to emphasize we're by no means asking this court to somehow rule that we have made our case at this point. It's a pleading stage. What annuitized means, what present value means to us is an issue that has to be resolved after the pleading stage. And if I may just, I see I have 40 seconds left. I do want to say on the Rule 9B issue, I understand what Your Honor, Judge Kayada just made. The separate point of the district court finding that we didn't specify who made the alleged misrepresentations, we think we have. We've identified the people. We've identified the statement. We've identified the who, what, when, and where we believe to, satisfactorily to meet Rule 9B. I see that I only have 10 seconds left, so I'll sit down unless the court has questions. You have reserved three minutes. Thank you. Good morning.  Counsel, it would be useful if you could start with the 9B question as opposed to the district court ruling on Enterprise. I'm sorry, Your Honor. You would like me to start with Enterprise? The Rule 9B issue and the questioning that has gone on as to, given the information that was disclosed, how the pleadings can or can't be read to assert a fraud or misrepresentation. Thank you, Your Honor. I'll dive right in. Your Honor, we contend that on the very pleadings that plaintiffs have alleged, both in their opening complaint and in their amended complaint, that there really is no way they can avoid their own pleadings and their own concessions they've made to rectify the 9B lack of specificity, lack of injury, lack of materiality issues. We'll start with the last point Mr. Spiegel just made. Didn't they say enough about who said it? Somebody comes and says AIG. Certainly the rule can't be that a plaintiff can never bring a fraud claim until they go out and figure out themselves exactly which AIG company the person is associated with. Well, Your Honor, to allege a RICO Enterprise, to allege a fraud claim... No, I'm talking about a fraud claim. A fraud claim. There's some suggestion on your side that simply naming John so-and-so of AIG wasn't enough specificity. But that's how John so-and-so identified himself. So that can't be the rule that if a multi-corporate family, someone comes in, identifies themselves by the common corporate moniker, then you can never sue them for fraud unless you guess which of a hundred companies employ them. Well, Your Honor, the fact that Mr. Senderhoff was not precisely identified is not the issue we're standing on today. That was my question. That was wise. Now would you move on? Yes. What are you standing on in saying that there was inadequate pleading for 9B purposes? Well, for instance, Your Honor, in paragraph 40 of the amended complaint, the plaintiffs allege that AIG employees, its approved brokers, and in-house brokers are also trained to conceal this scheme. I want to focus the court a moment on in-house brokers. As the court is familiar from the questions that have been asked, One of the important issues in this case is the simple reality that Lexington, the underlying insurer, entered into a settlement with the underlying plaintiffs, with Ms. Ezell, Mr. Whitley, Ms. Biggs. That was a settlement that came out after claims were made in adversarial proceeding. As Your Honor noted, they were represented by counsel, and they reached a settlement. They negotiated a settlement. Part of that settlement was that there would be specific periodic payments, and those specific periodic payments were elaborated in the underlying settlement agreements, as the court has indicated. And those specific periodic payments were provided by the purchase of annuities by Lexington Insurance Company. And Lexington Insurance Company paid every dollar it was supposed to pay. Every dollar indicated in the settlement memorandum regarding Ezell and Whitley, every dollar indicated in the settlement agreement with Ms. Bidding, was paid by Lexington to the different life insurance companies. Let me ask you this so I can get a handle on where their complaint is going. Suppose the agreement said, we'll pay you the present value of $200,000. We'll take care of the broker commission, so all the $200,000 will go to the issuing annuity company, and that will generate a stream of payments as follows, which have a present value of $200,000. And unbeknownst to you, the stream of payments, in fact, only add up to $196,000 present value, because they were lying to you. Would you have a fraud claim? Because I think that's their theory. Their theory is that everything I just said could be packed into the word annuitize. Let's assume it could be. What is wrong with the theory then? Your Honor, if I may ask the court's indulgence for just one moment, I think the fatal flaw in their argument with respect to annuitize is, it is 180 degrees inconsistent with their own pleadings. Their pleadings make abundantly clear, absolutely clear, that cost of annuity and present value of annuity mean the same thing. For instance, paragraph 109 of the amended complaint, 109A, footnote 7, says, and I quote, for purposes of this complaint, the terms present value and cost are interchangeable. There are a number of other examples of this throughout the amended complaint. But that begs the question, doesn't it? Yeah. If they are interchangeable, it doesn't tell us which theory is going to be used to define the interchangeable terms. Your Honor, I certainly see your point, and let me address it this way if I may. Whether, as the plaintiffs do, use the terms interchangeably and now attempt to create ambiguity where none exists by focusing only on present value and arguing that present value is something different than cost. What is clear from the pleadings is that when Ezell and Whitley, represented by counsel, decided to settle their case, an adversarial process, they decided to settle for $900,000, a lump sum payment of $700,000, and they would receive, as pointed out by the court, a series of specific monthly payments spread out over 20 years. And Lexington Insurance Company conveyed, represented, that it would spend $200,000 to provide those specific periodic payments. And that is exactly what happened. There is no dispute. On page 2 of the reply brief, plaintiffs concede that Lexington did pay the $200,000 to the life insurer. They concede that Lexington did pay the $1.654 million to fund the three annuities significantly to three non-parties, non-affiliated companies, Allstate, Hartford, and New York Life. So I think when you look at what's actually happening here, the contracts are clear, the plaintiffs have received everything they bargained for, Lexington has paid every dollar it said it would pay. And so whether one calls it cost or present value, Lexington paid $200,000 to provide the plaintiffs exactly what they and their lawyers bargained for. Counsel, you know, there's been some discussion of whether there is any ambiguity in the language that would permit plaintiff's theory to go forward. I understand that you're taking the position there is no ambiguity. But I do think on the 9B issue, which is what I've been trying to direct you to, a mere suggestion of ambiguity isn't enough under 9B. It's an area of law where there are, in fact, higher pleading requirements than the usual, you know, does the complaint on any possible reading state a claim. So is there any law out there that you can point us to that says the mere possibility of an ambiguity is or is not satisfactory under the 9B standard? Well, Your Honor, we did touch upon that in our brief, but if I may shift gears in response to your question. You've been shifting gears a lot in response to my question. Perhaps you could answer it directly. Certainly, Your Honor, and my apologies. Your Honor, we believe that the court below was correct, that the use of AIG in numerous places in the complaint, as I mentioned with respect to in-house brokers who may or may not exist, is an important deficiency because if the brokers are life insurance brokers, that is very different than if they are property and casualty brokers. In other places, there are... I think, can I, I'm just having some trouble. That, to me, goes back to the issue of who, and that's where Judge Kayada started out with you. I'm more concerned with whether the statements made, whether there's any indicia that they are fraudulent and what there is to support any such inference. Thank you, Your Honor. Let me, and I will try my best, and my apologies, answer that directly. Your Honor, the statements, the misrepresentations that the plaintiff's claim happened really boiled down to that Lexington paid less money than it said it would. In fact, what they call at paragraph 40 of the amended complaint, the gravamen of their complaint, is the failure of the disclosure of the 4% commission. That's what plaintiffs call the gravamen of their complaint, that Lexington paid less than the $200,000, that Lexington paid less than the $1.654 million to fund the biddings through annuities. And as the court below... Sorry, that misrepresentation is underlied and is simply incorrect. As the record itself makes clear, Lexington did make those payments to the life insurers. I think what some of us are trying to get at is, let's assume a complaint with great specificity nails the who, what, when, and where. It's got all that covered in great detail, even down to the time of day. But the statement that is alleged to be fraudulent itself can be interpreted in two different ways, one of which would be false and hence fraudulent, the other of which would be innocuous. When we're confronted with that, do we say that the 9B heightened pleading means the plaintiff loses because of that ambiguity, or do we say 9B has been satisfied by the specificity as to who, what, when, and where, and hence at this point we apply the Rule 12 plausibility test as a sort of plausible reading of that, that the people really meant that annuity met a cost, annuitized. Your Honor, I think that the complaint as pled does not satisfy 9B, but even if one assumes that it has, plaintiffs have failed to plead any duty on the part of Lexington. They cite not a single case where Lexington has a duty to disclose the pricing of an annuity offered by a third party, in this case by American General, by Allstate, by Hartford, or by New York Life. And in fact, as the cases we conveyed and cited in our brief make clear, life insurance companies that issue annuities do not even have a duty to disclose to their direct privity customers the pricing of their products. And in this situation, it's two steps removed, because it is Lexington that has the contractual privity with the claimant.  So I'm getting away from the Rule 12 issue now to reasons why the evidence that would support a Rule 56 determination in your favor. No, Your Honor, we think that they simply, that is an appropriate 12B issue, because it's the facts as they've pled them. If you accept everything they have pled, there is still no legal duty that Lexington has to disclose the pricing of the annuities issued by third parties. So what you're saying, when you bear in mind the specification of the monthly annuity amount, what you're saying really is not so much that there is a 9B failure, but there is a 9B success to disclose facts on the basis of which you can only throw them out of court for failure to plead damages. Certainly, we agree wholeheartedly with that. They were too clear for their own good, is what you're saying. Well, I guess they have pled sufficiently that on the face of the documents, there is no injury. They could not plead a breach of contract claim on the way they have pled this complaint, which I think really highlights the weakness of their fraud claims. And I think Your Honor is absolutely right that they have pled a scenario, and they can't fix this on further pleading, if I may. They can't fix this on further pleadings because the basic structure will not change. A duty will not be created by further proceedings. I would just add as well that there was, my apologies, I would just add as well that there was no discovery below, and the plaintiffs did have an opportunity to address all of the deficiencies that we are still arguing about now with respect to their amended complaint. Thank you. Thank you. I'd like to hone in on the court's concern with the fact that the agreement set out the monthly payments. And I'd like to look at Ms. Bidding's settlement agreement. And it's in appendix, on page appendix 72, section 2.0 of the agreement says this. In consideration of the release set forth above, the defendant and insurer agreed to pay to the individuals named below, the payees, the sums outlined in this section 2 below, which have a total present day value of $2.95 million. Now, $2.95 million, if the court looks at this, will see it's a combination adding the two cash payments and the amount of $1.642 million, which they say on the next page, is the total present value of the periodic payments. I understand this is a document that our clients, lawyers in the underlying case, signed. This was a statement by the defendants that the defendants and insurer agreed to pay to the individuals below a total present day value of $2.95 million. This issue that we're discussing, and I understand it's an issue in the case, was never briefed. The defendants never addressed what annuitize means. They never addressed what present day value means. It would be a little frustrating to get thrown out of court for an argument that was never made and that we have not been able to address in our briefing. You know, the question before us isn't the arguments they don't make. The question is what you presented to the district court and whether it was sufficient. And if I may say, obviously this is de novo review, I understand that. But the district court did find that we alleged a misrepresentation. The court found, both in the initial dismissal order and in the second one, that we alleged a misrepresentation based on the promise to annuitize certain amounts and said we had standing because of that. Well, it wasn't the court. Didn't the court simply mean by that? That if you look at that particular allegation, you have alleged a fraud. It didn't say that reading the series of contract documents together, that in fact that allegation can reasonably be understood. They were not lengthy statements. The court didn't explain what it looked like, whether it was taking into account the contracts or not. So I don't know, Your Honor, to be frank. I just don't know. I see my time is up. Unless the court has any other questions, I have nothing to add. Thank you. Thank you. You're lucky your argument was set for today. We had to cancel arguments yesterday because of the hazardous travel conditions. Be careful on the black ice as you leave. Thank you. All rise, please.